UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

COLUMBIA PICTURES INDUSTRIES, INC.,
DISNEY ENTERPRISES, INC., SCREEN GEMS,
INC., TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY
STUDIOS LLLP, and WARNER BROS.
ENTERTAINMENT INC.,

                    Plaintiffs,                  No. _____

       v.

JOSEPH MORI, GLOBAL OFFICE, INC.,
and CHRISTOPHER BARNARD,

                    Defendants.

---------------------------------------------------------------------X

## COMPLAINT

For their Complaint, Plaintiffs Columbia Pictures Industries, Inc. ("Columbia"); Disney

Enterprises, Inc. ("Disney"); Screen Gems, Inc. ("Screen Gems"), Twentieth Century Fox Film

Corporation ("Fox"); Universal City Studios LLLP ("Universal"); and Warner Bros.

Entertainment Inc. ("Warner Bros.") hereby allege as follows:

### Nature Of The Case

1.     This is a case of willful infringement of copyright over the Internet. Defendants

knowingly enable, encourage and profit from massive online piracy – piracy Defendants could

stop but refuse to.

2.     Specifically, Defendants operate a computer server and a website as part of an

online computer network known as "BitTorrent." Defendants enable their users to locate and

download infringing copies of Plaintiffs' valuable copyrighted motion pictures and television

shows for free and without authorization. Defendants' users simultaneously distribute infringing copies of those same works to countless others around the world. As a direct result of Defendants' conduct, those users make and distribute unauthorized copies of thousands of the most popular motion pictures and television shows everyday – from new releases that are still in theatres to blockbuster DVD releases to today's most popular television shows. Absent Defendants' active and ongoing participation in the daily acts of infringement, this widespread unauthorized copying and distribution of Plaintiffs' valuable property simply could not happen on the scale that it does. The harm to Plaintiffs, who invest millions of dollars and enormous creative energies to produce their creative copyrighted works, is manifest and irreparable.

### The Parties

3. Plaintiffs Disney, Columbia, Screen Gems, Fox, Universal, and Warner Bros. are among the leading motion picture studios in the world. Plaintiffs are responsible for creating and distributing some of the world's most popular filmed entertainment.

4. Each of these Plaintiffs, including their affiliates and/or subsidiaries, owns the copyrights and/or exclusive reproduction and distribution rights to many popular motion pictures, including those listed on Exhibit A.

5. Plaintiff Columbia is a Delaware corporation, with its principal place of business in California.

6. Plaintiff Disney is a Delaware corporation, with its principal place of business in California.

7. Plaintiff Screen Gems is a Delaware corporation, with its principal place of business in California.

2

8.    Plaintiff Fox is a Delaware corporation, with its principal place of business in California.

9.    Plaintiff Universal is a Delaware corporation, with its principal place of business in California.

10.    Plaintiff Warner Bros. is a Delaware corporation, with its principal place of business in California.

11.    Defendants jointly operate a website, UK-Torrents.com, at the Internet Protocol address 66.199.233.133, by virtue of which Plaintiffs' copyrighted works are reproduced and distributed. Defendants also jointly operate a BitTorrent tracker, UK-Torrents.net, located at the Internet Protocol address 66.199.233.133, which facilitates the reproduction and distribution of Plaintiffs' copyrighted works. On information and belief, all of the Defendants jointly participate in and profit from the activities alleged herein.

12.    On information and belief, Defendant Joseph Mori is a resident of New York, and is the President of Defendant Global Office, Inc.

13.    On information and belief, Defendant Global Office, Inc. maintains its principal place of business in Fishkill, New York. Plaintiffs have been unable to ascertain the state in which Global Office, Inc. is incorporated.

14.    On information and belief, Defendant Christopher Barnard is a resident of the United Kingdom.

### Jurisdiction And Venue

15.    This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, and therefore the Court has jurisdiction under 17 U.S.C. § 101 *et seq.*; 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1338(a) (copyright jurisdiction).

16.    Personal jurisdiction over the Defendants is proper.  Defendants have chosen to purposefully direct their infringing activities at New York.  The Defendants have contracted, or, on information and belief, have conspired with other Defendants who have contracted with Ezzi Internet Partners, an Internet service provider located in New York, to host the server that enables infringement of Plaintiffs' copyrights.  Because the server is located in New York, the acts of infringement giving rise to this action for contributory and vicarious infringement actually occur in New York.  By operating this server in New York, Defendants' contracts have been continuous and systematic.  Further, Defendants have directed their infringing website at the residents of New York.  Not only is the website accessible in New York, Defendants actively solicit donations, including donations from New York residents, in order to obtain a financial benefit from the infringing activity occurring on their website.  In fact, Defendants have contracted or, on information and belief, have conspired with other Defendants who have contracted with PayPal, Inc, a United States company, to receive these donations and profit from the infringement that Defendants facilitate.  New York residents, like all other users, also must register with Defendants in order to view the torrent files on the website, a necessary step to downloading the infringing copies of Plaintiffs' works.  Once Defendants permit users, including New York residents, to access the torrent files, the users' computers continuously interact with Defendants' website and BitTorrent tracker to download infringing copies of Plaintiffs' works, in a process explained in more detail below in ¶¶18-29.  Thus, the voluminous acts of direct infringement for which Defendants are contributorily and vicariously liable occur throughout the United States, and many occur in New York, thereby causing harm to Plaintiffs' copyrights throughout the United States and particularly in New York.  Defendants also actively threaten to forbid users from using their website and BitTorrent tracker for various reasons, and Defendants

4

actively decide which users may make available (or upload) infringing material for other users to copy.  In these and other ways, Defendants use their website and server to continuously interact with the State of New York and its residents.  In addition, jurisdiction is proper over Defendants Mori and Global Office, Inc. because they may be found in New York.

17.    Venue in this District is proper under 28 U.S.C. § 1391(b), § 1391(d) and/or § 1400(a).  On information and belief, each Defendant may be found in this District or is an alien that may be sued in this District, and/or a substantial part of the acts of infringement complained of herein occurred in this District.

### BitTorrent And Defendants' Infringing Conduct

18.    BitTorrent is a peer-to-peer network optimized for the copying and distribution of large files.  On a "peer-to-peer" network, the actual exchange of the files – *i.e.*, the actual downloading and uploading – takes place directly between users (or "peers") of the network. Whether BitTorrent is used for legitimate purposes or copyright infringement is determined by those who operate its websites and its servers.  In this case, the Defendants operate a BitTorrent website and server for the purpose of stealing and dealing Plaintiffs' copyrighted movies and television programs.

19.    Defendants deliberately set up and operate a computer server and a website that, by design, allow people to use the BitTorrent network to infringe Plaintiffs' copyrighted motion pictures.  Simply put, the Defendants' website and server exist to facilitate copyright infringement – to allow Internet users to quickly transfer files, almost all of them infringing, many of them Plaintiffs' copyrighted movies and television programs.

20.    Downloading files from the BitTorrent network is straight-forward.  Users go to websites that list files, or in this case movies and television programs, that are available for

5

download. By clicking on the file name, the file (the movie or television program) is automatically copied to the user's computer. That new file is a perfect digital copy – ready to be viewed, burned to a portable media like a DVD, and/or copied by and distributed to another user.

21.     The BitTorrent network is made up of three principal components: (a) a BitTorrent "client" application, (b) indexing websites known as "torrent sites" and (c) computer servers known as BitTorrent "trackers." Each is necessary for the operation of the network.

22.     The BitTorrent network works as follows: users download a small program that they install on their computers – the BitTorrent "client" application. The BitTorrent client is the users' interface during the downloading process. There are many different versions of BitTorrent clients, all of which are readily available on the Internet for free. BitTorrent client applications do not have the ability to search for files. To find files available for download, users must visit torrent sites using any standard Internet browser.

23.     A torrent site is a website that contains an index of files available on the network (generally an extensive listing of movies and television programs, among other copyrighted content). The torrent site hosts and distributes small files known as "torrents." Torrents do not themselves hold actual copies of the movie or television program. Rather, torrents are binary files that automatically and invisibly instruct a user's computer where to go and how to get the desired file. Essentially, torrents connect users to a specific tracker that has the file the user wants. Without torrents, users cannot connect to trackers to download the desired file.

24.     A BitTorrent tracker is a server configured by its operator to manage the actual distribution of files – to connect uploaders (those who are distributing a movie) with downloaders (those who are copying a movie). A tracker functions in many respects like a "traffic cop" directing a BitTorrent user's computer where to find users who have a particular

6

file, and then providing the user's computer with access to those other users to facilitate the download process. As a BitTorrent user seeks to download a movie file, he or she needs a tracker that can identify where the file is available in cyberspace – or, in the parlance of peer-to-peer file sharing, the user needs to find other "peers" from which the user can obtain the desired file.

25.    Both torrent sites and trackers play an integral role in the process of using BitTorrent to download files. Without them, users could not identify, locate or download infringing files. Indeed, the content available on the BitTorrent network is defined entirely by what files the operators of torrent sites and trackers choose to allow to be indexed and distributed.

26.    Defendants operate both a torrent site and a tracker. In doing so, the Defendants operate not one, but two, components that are instrumental to the infringement of Plaintiffs' copyrighted movies and television programs. They have made deliberate decisions to provide a material contribution – indeed, an essential contribution – to the infringement occurring on BitTorrent. They solicit users to upload and share new copyrighted material. They could easily stop the infringement if they wanted to, but they do not.

27.    The blatant infringements using Defendants' torrent site and tracker are obvious – and are known to Defendants. Anyone who visits Defendants' torrent site, including Defendants themselves, can immediately observe the catalog of infringing files being indexed from "Garden State" to "The Incredibles," all organized by category to help the user find exactly what he or she wants. Defendants also can view, in real-time, a list of all the files their tracker is helping to distribute, and can immediately see that they are overwhelmingly infringing. Defendants can also view postings on their bulletin boards that discuss infringing activities occurring on their

torrent site and tracker. Defendants know that their torrent site and tracker are inducing, causing and/or materially contributing to infringing conduct.

28.     Defendants exercise total control over the infringing activity on their torrent site and tracker. Defendants decide exactly what torrents are indexed on their site and what files their tracker helps to distribute, and they bar users from accessing the newest torrents unless the users share sufficient numbers of their own files too. Indeed, a number of operators of legitimate torrent sites and trackers refuse to index or track torrents that correspond to infringing files. Other operators refuse to index or track torrents that correspond to pornographic files, defective or spoof files, or files that contain viruses. Often the screening out of defective or spoof files is done to facilitate the infringement process by screening out files that might frustrate users' efforts to locate and copy infringing files. Defendants easily could prevent infringement of Plaintiffs' copyrighted works by not indexing torrent files corresponding to Plaintiffs' copyrighted works and by not tracking Plaintiffs' copyrighted works. Defendants' torrent site requires users to register before the users may view the torrents, showing that Defendants have the ability to decide which users can access their torrent site and tracker, including the right and ability to exclude or ban specific users.

29.     Defendants profit from the infringement they make possible. They sell advertising that is displayed on their torrent site and also solicit donations to support their infringing activities -- promising "VIP" access to donors, and bragging about the success of their ad programs. For Defendants, the value of their site and the financial benefits they receive are directly dependent upon the number of users attracted to their site – the more users, the greater the financial benefit. Plaintiffs' popular movies and television shows are the draw that attracts users to their site. Thus, Defendants profit from the widespread infringement that they facilitate.

8

## Claim For Relief

(For Copyright Infringement Pursuant to 17 U.S.C. § 501 *et seq.*)

30.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 29 as if fully set forth herein.

31.     Motion pictures and television programs owned by Plaintiffs have been and continue to be illegally reproduced and distributed, without authorization, using Defendants' torrent site and tracker.  Plaintiffs own the copyrights, or the exclusive reproduction and distribution rights, in the copyrighted works listed on Exhibit A, all of which have been infringed with the active assistance of Defendants.

32.     Through their creation, maintenance, and operation of a torrent site and a tracker, Defendants knowingly induce, cause, and/or otherwise materially contribute to the unauthorized reproduction and distribution of copyrighted motion pictures, including those listed on Exhibit A hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States. 17 U.S.C. § 106.

33.     Defendants further have the right and ability to supervise and control the infringing activities that occur through the use of their torrent site and tracker, and at all relevant times have derived a direct financial benefit from the infringement of Plaintiffs' copyrights.

34.     The foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

35.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b).

36. Alternatively, Plaintiffs are entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

37. Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

38. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further infringements of their copyrights and exclusive rights under copyright.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. For a preliminary injunction enjoining Defendants and their respective agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert with each or any of them, from:

(i) aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the unauthorized reproduction, downloading, uploading, and/or distribution of copies of Plaintiffs' copyrighted works, whether using Defendants' torrent site or tracker or by any other means; and

(ii) downloading, uploading, and/or otherwise reproducing or distributing Plaintiffs' copyrighted works, whether using the BitTorrent network or by any other means.

B. For all damages to which Plaintiffs may be entitled, including Defendants' profits, in such amounts as may be found. Alternatively, at Plaintiffs' election, for statutory damages in the maximum amount allowed by law.

C. For prejudgment interest according to law.

D. For Plaintiffs' attorneys' fees, and full costs and disbursements in this action.

E. For such other and further relief as the Court may deem proper and just.

Respectfully submitted,

Donald B. Verrilli, Jr.
Steven B. Fabrizio (SF 8639)
Matthew J. Oppenheim
JENNER & BLOCK LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C.  20005
Phone:  (202) 639-6000
Fax:      (202) 639-6066

*Attorneys for Plaintiffs*

Dated:  February 10, 2005

11

# SCHEDULE A

| TITLE | PLAINTIFF | COPYRIGHT | DATE |
|---|---|---|---|
| | | | |
| ANACONDAS: THE HUNT FOR THE BLOOD ORCHID | SCREEN GEMS, INC. | PA1 233-739 | 9/01/04 |
| BRIDGET JONES: THE EDGE OF REASON | UNIVERSAL CITY STUDIOS LLLP | PENDING | |
| CATWOMAN | WARNER BROS. ENTERTAINMENT INC. | PA1 220-570 | 7/29/04 |
| CHRONICLES OF RIDDICK, THE | UNIVERSAL CITY STUDIOS LLLP | PA1 225-471 | 6/21/04 |
| GARDEN STATE | TWENTIETH CENTURY FOX FILM CORPORATION | PA1 220-445 | 7/30/04 |
| GIRL NEXT DOOR, THE | TWENTIETH CENTURY FOX FILM CORPORATION | PA1 202-654 | 2/20/03 |
| GRUDGE, THE | COLUMBIA PICTURES INDUSTRIES, INC. | PA1 241-927 | 10/22/04 |
| MICKEY'S TWICE UPON A CHRISTMAS | DISNEY ENTERPRISES, INC. | PENDING | |
| POLAR EXPRESS, THE | WARNER BROS. ENTERTAINMENT INC. | PENDING | |
| PRINCESS DIARIES 2, THE: ROYAL ENGAGEMENT | DISNEY ENTERPRISES, INC. | PA1 241-871 | 9/29/04 |
| TWO BROTHERS | UNIVERSAL CITY STUDIOS LLLP | PA1 225-472 | 6/26/04 |

uk-torrents.com